# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MICHAEL E. REEDY, et al.,** | ) |
| **Plaintiffs,** | ) |
| v. | ) Case No. 10-3155 |
| **ROGER WERHOLTZ,** | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

Plaintiff Michael E. Reedy and 175 other plaintiffs filed this action against Roger Werholtz, the Secretary of the Kansas Department of Corrections, alleging that the administration of their inmate funds violates their constitutional rights. Mr. Werholtz has filed a motion to dismiss or in the alternative for summary judgment (doc. 10), and for the reasons discussed below, that motion is granted.

**1. Background**[1]

Mr. Reedy and the other plaintiffs are incarcerated in the custody of the Kansas Department of Corrections (KDOC). Pursuant to Kan. Stat. Ann. § 76-172 et seq. and under the supervision of Mr. Werholtz, KDOC enacted and enforces Inmate Management Policy and Procedure (IMPP) 04-103. IMPP 04-103 mandates that 10%

---

[1] Consistent with the well-established standard for evaluating a motion to dismiss, the court accepts as true all well pleaded factual allegations in the complaint. Fed. R. Civ. P. 12(b)(6).

of all funds collected by an inmate from sources outside KDOC be placed in a savings account and held until the inmate's release. This procedure is commonly known as "forced savings." Use of funds from the forced savings account is limited to payment of garnishments and community identifications—birth certificate, driver's license, and social security card. If the inmate's cash balance is exhausted, the money may be used, if approved by the warden, for services that would facilitate the inmate's reentry into the community such as civil filing fees, transcript fees, and subpoena fees.

In addition to forced savings under IMPP 04-103, IMPP 04-109 requires inmates who are employed through private industry or work-release programs to deposit a specified portion of their earnings into a "mandatory savings account." Use of funds from the mandatory savings account is limited to payment of garnishments.

All funds accrued by each inmate under these provisions are provided to the inmate upon release from custody. If the inmate dies while in custody, the funds are disbursed to the inmate's estate.

According to the First Amended Complaint, Plaintiffs wish to send some of the money in their forced and mandatory savings accounts to their families, but according to prison regulations, they are not allowed to do so. Plaintiffs maintain that the restrictions on the use of their money violate their constitutional rights.

## 2. Standard of Review[2]

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 550 U.S. at 555. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 555-56, and view all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## 3. Discussion

Mr. Werholtz's motion to dismiss is based on his assertion of qualified immunity

---

[2] Mr. Werholtz styled his motion as a "motion to dismiss or in the alternative, motion for summary judgment." Having reviewed the pleadings in this case, the court sees no need to look to evidence outside the complaint to resolve the issues presented. As such, the court will evaluate the motion as a Rule 12(b)(6) motion to dismiss.

3

because, he contends, Plaintiffs have not alleged constitutional violations.[3] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 129 S. Ct. 808, 815 (2009) (quotation omitted). To resolve qualified immunity claims, a court must consider two elements: whether a constitutional violation occurred and whether the violated right was "clearly established" at the time of the violation. *Id.* at 815-16. But courts have discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

Plaintiffs' First Amended Complaint purports to set out five causes of action, but many are nearly identical in their wording. It appears that Plaintiffs are raising three distinct constitutional issues: first, that Mr. Werholtz's enforcement of forced and mandatory savings accounts violates their Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution; second, that his actions

---

[3] Mr. Werholtz also contends that 171 of the 176 plaintiffs failed to exhaust their administrative remedies. In response, Plaintiffs suggest that the court could "decide to treat this as a class action [because they] are all similarly situated," in which case exhaustion by a few Plaintiffs would satisfy the requirement for the class. Given the court's resolution of the substantive issues, it need not address the exhaustion requirement or Plaintiffs' class action request. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2392 (2006) (considering dismissal under 42 U.S.C. § 1997e(c)(2), stating PLRA exhaustion requirement is not jurisdictional; district court may "dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies").

4

amount to cruel and unusual punishment in violation of the Kansas Constitution; and third, that his actions violate the Ex Post Facto Clause of both the United States Constitution and the Kansas Constitution.[4]

*A.    Substantive Due Process*

A prison regulation does not violate a prisoner's substantive due process rights unless the prisoner proves that the regulation lacks "a rational relation to legitimate penological interests." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (upholding restrictions on visitation). Plaintiffs argue that IMPP 04-103 and 04-109 are not related to any penological interest; they argue that there can be no legitimate state interest in not allowing prisoners to help support their families by sending them money from inmate savings accounts.

However, "[l]imitations on inmates' use and receipt of money while in prison are ordinary incidents of prison life and are well within the bounds of what a sentenced inmate may reasonably be expected to encounter as a result of his or her conviction." *Larkin v. Werholtz*, No. 07-3325, 2008 WL 852126, at *4 (D. Kan. Mar. 28 2008). An

---

[4] In their response to Mr. Werholtz's motion to dismiss, Plaintiffs include several new allegations: unlawful seizure of property in violation of the Fourth Amendment; unlawful taking without just compensation in violation of the Fifth Amendment; cruel and unusual punishment under the United States Constitution (as distinguished from the Kansas Constitutional claim included in the complaint); an "unequal protection" violation; and "other violations as may be discovered during discovery." It is inappropriate, however, to use a response to a motion to dismiss to raise a new claim for the first time. *Boyer v. Bd. of Cnty Comm'rs*, 922 F. Supp. 476, 482 (D. Kan. 1996); *see also Schmitt v. Rice*, No. 08-3047, 2010 WL 3775526, at *4 n.2 (D. Kan. Sept. 21, 2010). As such, those claims will not be considered.

inmate's right to receive materials may be limited for legitimate penological interests. *Steffey v. Orman*, 461 F.3d 1218, 1222 (10th Cir. 2006). And prison officials have a legitimate interest in controlling the amount and source of funds received by inmates. *Id.* In particular, KDOC established forced and mandatory savings accounts for a legitimate penological interest—to assist inmates with reentry into the community upon release or passing it through their estates upon death. *See, e.g., Larkin*, 2008 WL 852126, at *4 (citing *Ellibee v. Simmons*, 85 P.3d 216 (Kan. Ct. App. 2004). This interest remains even if an inmate's release date is uncertain or potentially "a great many years into the future." *Sperry v. Werholtz*, 321 Fed. App'x 775, 779 (10th Cir. 2009).[5]

Plaintiffs argue that other state correctional systems maintain control over inmate funds without completely restricting an inmate's ability to send money to family members. Policies of other states, however, do not effect whether the KDOC policy is unconstitutional. This court must evaluate IMPP 04-103 and 04-109 by themselves, keeping in mind that the standard does not require that only the least restrictive policy be implemented. *Turner v. Safley*, 482 U.S. 78, 90-91 (1987). Here, the forced and mandatory savings account provisions are rationally related to a legitimate penological interest. As such, they do not violate Plaintiffs' substantive due process rights. *Accord Sperry*, 321 Fed. App'x at 779.

---

[5] Pursuant to Tenth Circuit Rule 32.1(A), the court cites this unpublished opinion for its persuasive value.

## B. Procedural Due Process

When evaluating a procedural due process claim, the court considers (1) whether the individual possessed a protected property interest to which due process protection was applicable; and (2) whether the individual was afforded an appropriate level of process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006).

It is unclear whether the Tenth Circuit would conclude that Plaintiffs have a protected property interest in the funds at issue. *See Sperry v. Werholtz*, No. 04-3125, 2008 WL 4216110, at *3 (D. Kan. Sept. 12, 2008) ("[T]he Tenth Circuit has not clearly determined whether an inmate has a protected property interest in money given to him from outside sources or money earned from prison wages."). *Compare Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989) (per curiam) (concluding that inmate had property interest in "monies received from friends and family outside the prison"), *with Steffey*, 461 F.3d at 1223 (characterizing the statement in *Gillihan* as dicta "because it is not apparent from the decision that any monies from outside sources were at issue in that case"). For purposes of this analysis, however, the court will assume without deciding that Plaintiffs have a protected property interest in the funds at issue.

Even so, it is unclear exactly what type of process Plaintiffs believe they were denied. They argue that they have a property interest in the money, but fail to address how the level of process afforded them was deficient. They do note that the grievances they filed were answered with what seemed to be form letters, but beyond that, they offer no suggestion as to how their procedural due process rights were violated. Indeed, prior

7

decisions have concluded that no process is due inmates in the implementation of IMPP 04-103; no hearing is needed because there is no factual issue to resolve in the implementation. *Sperry*, 321 Fed. App'x at 779; *Ellibee v. Simmons*, 201 Fed. App'x 612, 615 (10th Cir. 2006) (denying claim alleging that mandatory wage deductions for the crime victims compensation fund was a violation of procedural due process because deduction occurred regardless of whether the inmate's sentence included an order of restitution); *Sperry*, 2008 WL 4216110, at *3.

Instead, Plaintiffs continue to repeat their contention that the regulations themselves are unconstitutional because they have a property interest in their money. As discussed above, however, IMPP 04-103 and 04-109 do not violate their substantive due process rights. Lacking any argument about process, Plaintiffs' procedural due process claim cannot stand.

*C.     Kansas Constitution—Cruel and Unusual Punishment*

"Under § 9 of the Kansas Constitution Bill of Rights, a punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *State v. Gomez*, 235 P.3d 1203, 1210 (Kan. 2010).

Plaintiffs argue that restricting use of their forced and mandatory savings funds and denying them the right to help support their families is cruel and unusual. They also contend that it inflicts emotional stress on them. They have failed, however, to offer any

8

support that Kansas courts would consider this kind of deprivation as violative of the state constitution. Nothing about the IMPP provisions is particularly shocking or offensive to notions of human dignity.

Indeed, in applying the similar federal constitutional provision, courts have noted that typically only deprivations of "essential human needs" trigger constitutional protection against cruel and unusual punishment. *Gillihan*, 872 F.2d at 940-41; *see also Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (noting the Eighth Amendment "duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm").

Plaintiffs offer no support for their claim that requiring savings is cruel and unusual. This claim is dismissed.

   D.   *Ex Post Facto*

Article I, § 10, of the Constitution prohibits the States from passing any "ex post facto Law." U.S. Const. art. I, § 10. "The Ex Post Facto Clause prohibits states from passing laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Boutwell v. Keating*, 399 F.3d 1203, 1215 (10th Cir. 2005). A law violates the Ex Post Facto Clause if the law (1) applies to events occurring before it was enacted, and (2) disadvantages the petitioner by changing the definition of criminal conduct or increasing the sentence for the criminal conduct. *Smith v. Scott*, 223 F.3d 1191, 1194 (10th Cir. 2000) (citations omitted).

9

IMPP 04-103 and 04-109 do not alter the definition of criminal conduct or retroactively change the penalty of any crime. They merely direct how inmate funds are to be saved and used. Plaintiffs have no authority for their suggestion that these policies violate the Ex Post Facto Clause.

*E.     Conclusion*

Because Plaintiffs have alleged no constitutional violations on the face of their complaint, Mr. Werholtz is entitled to qualified immunity and this case is dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to dismiss (doc. 10) is granted.

**IT IS SO ORDERED** this 3rd day of January, 2011.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge
